**SO ORDERED.**

**SIGNED this 20th day of August, 2012.**




Robert E. Nugent
United States Chief Bankruptcy Judge

_____

**PUBLISHED**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:                              )
                                    )
MARK COUCHMAN,                      )    Case No. 07-11101
                                    )    Chapter 12
            Debtor.                 )
_____)

**MEMORANDUM OPINION**

Section 1229 permits a debtor to modify a confirmed chapter 12 plan to, among other things, reduce or extend the time for payments.[1] This is done by filing a modified plan which, upon filing and until disapproved after notice and a hearing, "becomes the plan."[2] According to 11 U.S.C. § 1229(b)(2), the requirements of § 1222(a), describing what provisions a plan must contain, and §

---

[1] 11 U.S.C. § 1229(a)(2). Subsequent statutory references are to the Bankruptcy Code, Title 11, U.S.C., unless otherwise indicated.

[2] § 1229(b)(2).

-1-

1225(a), setting out the requirements for confirmation, apply to the confirmation of any modified plan. In this case, the Bucklin National Bank argues that the drop dead provision in an agreed conditional stay relief order cannot be thwarted by the debtor's proposed plan modification that would, among other things, extend the debtor's time to make the Bank's payments. I concur that the stay relief order containing the drop-dead provision is final and remains enforceable, but find that it should not prevent the present version of the modified plan from being confirmed because the modification was not directed at undoing a declared default under the stay relief order. Because the modified plan meets the requirements of §§ 1222(a) and 1225(a), it must be confirmed.

### *Jurisdiction*

The confirmation of a modified plan is a core proceeding over which this Court has subject matter jurisdiction.[3]

### *Findings of Fact*

The debtor and the Bank submitted stipulations and briefs.[4] After reviewing them along with the record in this case, the Court finds as follows. Mark Couchman filed this chapter 12 case in 2007. Not until December 2, 2008 was he able to confirm a chapter 12 plan. Under the order confirming the plan, the Bank was allowed two claims, one secured by personal property and one secured by real estate. The personal property claim was to be paid in annual payments due December 1, 2008 and each December 1st thereafter. The real estate claim was to be paid in annual payments that were due August 1, 2008 and each August 1st thereafter.

---

[3] 28 U.S.C. §§ 157(b)(1), (b)(2)(L), and 1334(b).

[4] *See* Stipulation, Dkt. 244, Bank's Memorandum, Dkt. 245, Debtor's Response, Dkt. 246, and Bank's Reply, Dkt. 248. The debtor Mark Couchman appears by his attorney Dan W. Forker, Jr.. The Bucklin National Bank appears by its attorney Charles D. Lee.

-2-

Case 07-11101   Doc# 257   Filed 08/20/12   Page 2 of 9

The Bank's frustration is easy to understand: Couchman has been in a state of default or cure since 2008. His first personal property payment was not made until January 21, 2009, over 50 days late. He did not pay the first real estate payment, due in August of 2008, until October 6, 2008. The August 2009 real estate payment was made in September of 2009. And the August 2010 real estate payment was paid in November of 2010. In short, the stipulations suggest that he has *never* made a Bank payment on time.

The present controversy began when Couchman missed the December 1, 2009 personal property payment. In late January of 2010, the Bank moved for stay relief, noticing its motion for objections that were due on March 1, 2010. Couchman made the payment on the objection date. Then, on March 10, 2010, the Bank's and Couchman's counsel appeared in court to announce that the stay relief motion was "resolved pursuant to the terms of the agreed order to be submitted."[5] At that hearing, the trustee's counsel noted that funds had been received and both Couchman's and the Bank's counsel agreed that an order providing for a "drop dead clause" in the event of future missed payments would be entered. The agreed stay relief order entered on March 19, 2010 (the "Conditional Order") provides that in the event of a future payment default, the stay would be lifted 30 days after the Bank gave the debtor a written default notice.[6] The next payment due after entry of the Conditional Order was the August 1, 2010 real estate payment. Even though the debtor paid it in November of 2010 – 108 days late, the Bank did not declare a default or exercise its drop-dead rights.

Couchman next missed the December 1, 2010 personal property payment. Again the Bank

---

[5] Dkt. 180.

[6] Dkt. 182.

Case 07-11101   Doc# 257   Filed 08/20/12   Page 3 of 9

did not issue a default notice. Instead, the trustee took the lead on March 9, 2011 by seeking an order to show cause why the debtor's case should not be dismissed for payment and reporting defaults.[7] Then, on May 2, Couchman filed a motion to modify his plan ("Motion to Modify") by proposing to delay the August 1, 2011 *real estate payment* until December 1, 2011.[8] On May 5, the Bank filed its only notice of default, invoking the 30-day default clause in connection with the missed December 2010 *personal property* payment.[9] It also objected to the debtor's Motion to Modify, arguing that the motion was an overt attempt to modify the Conditional Order.[10] The Bank also noted that the modification was not feasible and therefore could not be confirmed under § 1225(a)(6). On May 11, 2011, the Court entered an agreed "temporary" order granting the trustee's motion to show cause and directed that the debtor file a further modified plan to deal with the missing December 2010 payments by May 14.[11] That order did not mention the Bank's default notice.

At a July 12, 2011 status conference on the May Motion to Modify, the Court established a discovery schedule and directed that the debtor make his August 1, 2011 real estate payment not

---

[7] Dkt. 203. The trustee stated that Couchman had made none of three December, 2010 plan payments (including the Bank's personal property payment) and had failed to file monthly reports after March of 2010.

[8] Dkt. 207. Note that this is *not* what the Stipulation says: it recites that the effect of the Motion to Modify was to "effectively chang[e] the due date for the *December 1, 2010 payment*." In fact, there is no mention in the Motion to Modify of the December 1 payment. *Cf.* Dkt. 244, ¶ 3(f) [Stipulation] and Dkt. 207, ¶ 3 [Motion to Modify]. Stipulating that the modification said something it did not say can't make it so.

[9] Dkt. 211. Although the Bank's certificate of service of notice of plan default does not expressly reference the December 2010 personal property payment, this was the only outstanding payment owed to the Bank as of May 5, 2011. *See* Stipulations, Dkt. 244, ¶ 7.

[10] Dkt. 210.

[11] Dkt. 212.

-4-

later than August 15, 2011.¹² On August 8, 2011, the Court entered an agreed final order on the trustee's show cause motion finding that the debtor had filed his reports and that he would be given until August 1, 2011 to make the December 1, 2010 personal property payment, subject to a 15-day grace period. If the payment wasn't made, the case would be dismissed, but the debtor could file a further motion to extend the payments on or before August 1. Bank counsel, along with debtor's counsel and the trustee, signed this agreed order.¹³ In the meantime, the debtor made the December 1, 2010 personal property payment on July 29, 2011, satisfying the August 1 deadline.¹⁴

On September 14, 2011, the debtor filed the amended motion to modify ("Amended Motion") that is before the court today.¹⁵ That motion provides for the Bank's August 1, 2011 real estate payment to be made not later than December 1, 2012.¹⁶ The Amended Motion also seeks deferral of the personal property payment due December 1, 2011 to December 1, 2012. The Bank objected.

*Analysis*

If the modified plan had been presented as the original plan, could it have been confirmed?

---

¹² Dkt. 220.

¹³ Dkt. 221.

¹⁴ After the Bank gave notice of default on May 5, 2011 with respect to the December 2010 personal property payment, it took no further action to enforce its claim secured by personal property.

¹⁵ Dkt. 223.

¹⁶ The original Motion to Modify sought an extension of the August 2011 real estate payment to December 1, 2011.

-5-

Case 07-11101    Doc# 257    Filed 08/20/12    Page 5 of 9

If the answer is yes, the modification should be granted.[17] The Court must determine whether the modified plan meets the plan contents and confirmation requirements of §§ 1222 and 1225. There is no doubt that § 1229 allows the debtor to modify his plan post-confirmation to extend the time in which payments may be made as Couchman seeks to do here. The Bank has withdrawn its feasibility objection[18] and argues that Couchman's modification cannot be permitted because doing so would alter the Bank's rights under the Conditional Order.

The Bank is correct that some bankruptcy courts have prohibited post-confirmation modifications that are aimed at changing agreed-upon negotiated terms as opposed to plan terms that could be imposed by a court.[19] Those courts require a showing of some post-confirmation change in circumstance that could not have been contemplated by the parties when the terms were negotiated. They reason that default clauses specifically anticipate and remedy possible defaults; the mere fact that the debtor has failed to comply with the plan terms is not enough to demonstrate an unanticipated change in circumstance.[20] Other courts disagree, suggesting that the presence of a drop-dead clause does not preclude modification; instead, the bankruptcy court should consider the reasons behind the default, including changed circumstances, in determining whether the

---

[17] *In re Gallagher*, 332 B.R. 277, 281 (Bankr. E.D. Pa. 2005)(Seventh amended chapter 13 plan was not feasible; confirmation denied).

[18] Dkt. 240.

[19] *See In re Grogg Farms, Inc.*, 91 B.R. 482, 485 (Bankr. N.D. Ind. 1988) (disallowing debtor's modification of chapter 12 plan in order to cure material plan default, where negotiated plan term provided that debtor's continuing default would entitle creditor to relief from stay).

[20] *Id*. (debtor's plan default was not an unforseen circumstance).

-6-

modification should be approved.[21] They decline to impose absolute restrictions or conditions on the statutory right to modify and they do not require that the debtor demonstrate changed circumstances in seeking to modify a confirmed plan that contains a drop-dead clause.[22] All of those cases deal with modifying a drop-dead provision contained in a plan.

Here, there is no drop-dead provision in the originally-confirmed plan. That provision appears instead in the stay relief Conditional Order, a separate and final order that could not, in any case, be "modified" under § 1229 because it is not a "plan." And, as the sequence of events suggests, the modification proposed by the debtor did not seek to undo any currently-pending exercise of the drop-dead provision. Therefore, neither § 1227(a) nor § 1229 precludes the debtor from modifying the plan as proposed.[23]

The Conditional Order did not "modify" the plan because it did not meet the procedural requirements of a proper modification. It did not contain the date of any proposed modification, and its terms weren't noticed to the other creditors as § 1229(b)(2) and Fed. R. Bankr. P. 3015 require. The Conditional Order is simply a bilateral agreement between the debtor and the Bank, blessed by the Court, that conditions the continued effect of the stay on the debtor curing a declared default within 30 days of receiving written notice.

The Bank issued a delayed default notice on May 5, 2011 that concerned the December 1,

---

[21] *In re Mader*, 108 B.R. 643, 647-48 (D. N.D. Ill. 1989) (Mere inclusion of default provision in confirmed chapter 12 plan does not necessarily preclude modification).

[22] *In re Larson*, 122 B.R. 417, 420 (Bankr. D. Idaho 1991).

[23] Section 1227(a) declares the binding effect of a confirmed plan, regardless of whether the plan was objected to, accepted or rejected.

2010 personal property payment.[24] It took no further action. Couchman made that payment on July 29, 2011, before the current Amended Motion to modify was filed. The Amended Motion deals with the 2011 personal property and real estate payments. No other default notices have been issued.

The terms of the conditional order anticipate the possibility that Couchman might amend his plan. It provides in pertinent part:"[I]n the event Debtor should fail to make a payment as provided for in the current plan, *and any amendments thereto*, within thirty (30) days of written notice of his default and the Debtor's failure to cure said default, the [Bank] shall be entitled to relief from stay . . . ."[25] The Bank gave notice of the December 1, 2010 personal property payment default on May 5, 2011, but the Motion to Modify only addressed the upcoming August, 2011 real estate payment. The Amended Motion before the Court today further extended the date for the August 2011 real estate payment from December 2011 to December 2012 and added the December 2011 personal property payment extending its due date to December 2012. Neither modification dealt with the December 2010 personal property payment. Accordingly, the modification cannot be read as somehow "undoing" the Conditional Order or the declared December 1, 2010 default.

Had there been an outstanding default notice at the time the Amended Motion was proposed, I might have concluded that the debtor was attempting to "frustrate the parties legitimate expectations" by changing the underlying agreement between the debtor and the Bank in a way that is similar to modifying one's confirmed plan around the old plan's default provisions.[26] That might also have implicated the requirement that the debtor propose the modification in good faith as §

---

[24] As noted previously, the December 2010 payment was the only payment default as of May, 2011. *See* note 9, *supra.*

[25] Dkt. 182, emphasis added.

[26] *In re Grogg Farms, Inc.*, *supra,* at 485.

-8-

1225(a)(3) requires. That did not happen here.

The Bank has abandoned its feasibility argument.[27] Having concluded that the Conditional Order remains in effect and is not a basis for denying approval of the Amended Motion, the debtor's Amended Motion should be granted. Nothing prevents the Bank from invoking the Conditional Order if the debtor fails to make a payment that is provided for under the modified plan.

### *Conclusion and Order*

The Bank's objection to the Amended Motion to modify is OVERRULED; the debtor's Amended Motion is granted and the modification is CONFIRMED with respect to the Bank's claim.

# # #

---

[27] Dkt. 240.